## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

HAROLD MEASHINTUBBY and NELLIE
MEASHINTUBBY,

*Plaintiffs,*

vs.

Case No. 22-CV-59-EFM

SHELLY PAULK, Chairperson of the
Oklahoma Tax Commission, *et al.*,

*Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

(Doc. 21).  Defendants are the Chairperson, the Vice-Chairperson, and the Secretary-Member of

the Oklahoma Tax Commission, sued in their official capacities by Plaintiffs Harold and Nellie

Meashintubby.  Plaintiffs, as enrolled members of the Choctaw Nation, seek declaratory and

injunctive relief prohibiting the Defendants from assessing, levying, and collecting Oklahoma state

taxes (including penalties and interest) upon their income.  They rely primarily on the Supreme

Court decision in *McGirt v. Oklahoma*[1] and its progeny from the Oklahoma courts, under which

much of eastern Oklahoma constitutes "Indian County" for the purposes of the federal Major

---

[1] 140 S. Ct. 2452 (2020).

Crimes Act. Based on this, they argue that their income should be exempt from taxation under the rule that, without Congressional authorization or a cession of jurisdiction, the State is generally without power to tax reservation lands or reservation Indians.[2]

Defendants do not respond to the merits of Plaintiffs' contentions at this time. Instead, their instant Motion argues that the federal Tax Injunction Act ("TIA") deprives this Court of subject matter jurisdiction to grant *any* of the relief requested by Plaintiff, including with respect to interest and penalties. Plaintiffs respond that the TIA does not apply to their request for relief. In the event the Court finds that the TIA does apply, Plaintiffs urge the Court to find that it does not apply to their requested relief as to the penalties and interest imposed, as well as their requests for declaratory relief and for a refund of the amount Plaintiffs paid under protest for the tax year 2020.

The Court agrees entirely with Defendants. As explained more fully below, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is granted.

## I.       Background

### 1.    *Legal Overview*

Plaintiffs' suit is generally based on the well-established principle that States are "without jurisdiction to subject a tribal member living on the reservation, and whose income derived from reservation sources, to a state income tax absent an express authorization from Congress."[3]

---

[2] *See Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458 (1995)

[3] *Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123 (1993) (citing *McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164 (1973)).

Supreme Court precedent has repeatedly affirmed this principle,[4] and Oklahoma law likewise reflects adherence to this categorical rule.  Under the Oklahoma Administrative Code, income earned by an enrolled member of a federally recognized tribe from sources within "Indian Country" under that tribe's jurisdiction is exempt from state income tax if the tribe member also lives within "Indian Country" under their tribe's jurisdiction.[5]  "Indian Country" is defined by Oklahoma regulation as "formal and informal reservations, dependent Indian communities, and Indian allotments, the Indian titles to which have not been extinguished, whether restricted or held in trust by the United States."[6]

The meaning of "Indian country" under Oklahoma tax regulations has been recently called into question following a number of decisions expounding on the meaning of the same term under the federal Major Crimes Act.  18 U.S.C. § 1151 defines "Indian country" as, among other things "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation."[7]  Beginning with *McGirt v. Oklahoma*,[8] the Supreme Court held that a large area in eastern Oklahoma that was historically part of the Creek Nation, under an 1833 treaty, qualifies as "Indian country" under § 1151.[9]  The Oklahoma Criminal Court of Appeals has

---

[4] *Id.*; *see also Chickasaw Nation*, 515 U.S. at 458 (recognizing categorical rule that "absent cession of jurisdiction or other federal statutes permitting it, we have held, a State is without power to tax reservation lands or reservation Indians.") (brackets and internal quotation omitted)

[5] *See* Okla. Admin. Code § 710:50-15-2(b)(1).

[6] *Id.* § 710:50-15-2(a)(1).

[7] 18 U.S.C § 1151(a)

[8] 140 S. Ct. 2452 (2020).

[9] *Id.* at 2459.

subsequently extended this holding to lands historically part of the Choctaw Nation,[10] as well those of the Chickasaw,[11] Cherokee,[12] Seminole,[13] and Quapaw Nations.[14]

Following these decisions, thousands of taxpayers have claimed exemption from Oklahoma income tax under § 710:50-15-2 of the Oklahoma Administrative Code. Plaintiffs are two of these taxpayers.

### 2.    *Factual and Procedural Background*

Plaintiffs are a married couple currently living in McAlester, Oklahoma. They are both enrolled members of the Choctaw Nation of Oklahoma. They allege that, during tax years 2017 and 2020, they both lived and worked within the boundaries of the Choctaw reservation. After the *McGirt* and *Sizemore* decisions, Plaintiff's amended their tax return for tax year 2017 to claim exemption from Oklahoma state income taxation under § 710:50-15-2. They claimed the same exemption for tax year 2020.

The Oklahoma Tax Commission ("OTC") denied Plaintiffs' requested exemptions. On June 3, 2021, the OTC sent a letter that disallowed the requested exemption as to Plaintiffs' 2017 amendment. Plaintiffs responded by filing a protest letter on July 15, 2021, to which they allege the OTC has not responded. Similarly, on October 19, 2021, the OTC disallowed Plaintiffs requested exemption as to their 2020 tax return. Plaintiffs' response, dated November 12, 2021,

---

[10] *Sizemore v. State*, 485 P.3d 867, 871 (Okla. Crim. App. 2021), *cert. denied*, 211 L. Ed. 2d 618, 142 S. Ct. 935 (2022).

[11] *Bosse v. State*, 499 P.3d 771, 774 (Okla. Crim. App. 2021), *cert. denied*, 212 L. Ed. 2d 23, 142 S. Ct. 1136 (2022)

[12] *Hogner v. State*, 500 P.3d 629, 635 (Okla. Crim. App. 2021).

[13] *Grayson v. State*, 485 P.3d 250, 254 (Okla. Crim. App. 2021), *cert. denied*, 211 L. Ed. 2d 618, 142 S. Ct. 934 (2022).

[14] *State v. Lawhorn*, 499 P.3d 777, 779 (Okla. Crim. App. 2021).

included a payment of the total tax due.  Plaintiffs also noted that the tax was being paid under protest and included a notice of intent to file suit.  The OTC later mailed Plaintiffs a notice demanding payment of interest and penalty amounts for tax year 2020, as a result of Plaintiffs' failure to pay their tax liability by the due date of June 15, 2021.

Plaintiffs initiated the instant action on February 18, 2022.  Their Complaint seeks the following relief: (1) preliminary and permanent injunctive relief preventing the assessment of Oklahoma state tax against their income; (2) preliminary and permanent injunctive relief preventing the assessment of any interest and penalties associated with their non-payment of income tax; (3) a declaratory judgment that the Choctaw reservation, as it is currently recognized for the purposes of federal criminal law, is "Indian country" for the purposes of preempting Oklahoma state taxation, including interest and penalties, upon Plaintiffs' income; and (4) recovery of the tax paid by the Plaintiffs under protest for the tax year 2020.

Defendants now move to dismiss Plaintiffs' Complaint in its entirety.  They contend that this Court lacks subject matter jurisdiction over the action under the Tax Injunction Act.

## II.   Legal Standard

Federal courts are courts of limited subject matter jurisdiction.[15]  As a result, federal courts "may only hear cases when empowered to do so by the Constitution and by act of Congress."[16]  Congress may also specifically divest federal courts of jurisdiction over certain types of cases.[17]  As relevant here, the Tax Injunction Act ("TIA") provides that "[t]he district courts shall not

---

[15] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[16] *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (quoting *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004)).

[17] *See, e.g.*, *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[18]  The TIA thus "operates to divest the federal courts of subject matter jurisdiction over claims challenging state taxation procedures where the state courts provide a plain, speedy and efficient remedy."[19]  The Supreme Court has read the TIA as a "broad jurisdictional barrier" that is "first and foremost a vehicle to limit dramatically federal district court jurisdiction."[20]

The purpose of the TIA is to "protect the 'federal balance' by permitting states to 'define and elaborate their own laws through their own courts and administrative processes without undue influence from the Federal Judiciary.' "[21]  "Courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text."[22]  That said, the TIA is not a "sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration."[23]

Because the subject matter jurisdiction of federal courts is limited, "there is a presumption against [the court's] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."[24]

---

[18] 28 U.S.C. § 1341.

[19] *Marcus*, 170 F.3d at 1309 (citation and internal quotations omitted).

[20] *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825-26 (1997) (internal quotations and citation omitted).

[21] *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 761 (10th Cir. 2010) (quoting *Farm Credit Servs.*, 520 U.S. at 826).

[22] *Id.* (quoting *Farm Credit Servs.*, 520 U.S. at 827) (brackets omitted).

[23] *Hibbs v. Winn*, 542 U.S. 88, 105 (2004) (quotation omitted).

[24] *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

### III.    Analysis

Defendants' invocation of the TIA raises two questions: (1) whether the various types of relief sought by Plaintiffs in this action fall within the purview of the TIA, and (2) whether the Oklahoma state courts provide a "plain, speedy and efficient remedy" for state tax disputes.

**A.    Each of the types of relief sought by Plaintiffs fall within the purview of the TIA.**

Plaintiffs seek four types of relief in this action.  First, they seek a preliminary and permanent injunction against the assessment of Oklahoma income taxes for income earned within the boundaries of Choctaw territory.  Second, and in the event the Court determines the TIA applies to bar the exercise of jurisdiction over Plaintiffs' first claim, they seek the alternative remedy of injunctive relief preventing the assessment of interest and penalties against Plaintiffs by the OTC.  Third, Plaintiffs seek a declaratory judgment that the Choctaw Reservation, as it is currently recognized for the purposes of federal criminal law, is Indian country for the purposes of preempting state taxation upon Plaintiffs' income.  And fourth, Plaintiffs seek a refund of the tax paid under protest for the tax year 2020.  The Court examines each in turn.

*1.    Injunctive Relief as to the Assessment of Income Tax.*

Plaintiffs' request for injunctive relief barring the OTC from assessing state taxes on income earned by Plaintiffs within the Choctaw reservation, as it is now recognized for the purposes of federal criminal law, is exactly the type of relief the TIA forbids this Court from awarding.  "[A]n injunction is clearly a form of equitable relief barred by the TIA."[25]  And there

---

[25] *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 7 (2015).

is no question that Plaintiffs are asking for an injunction against the "assessment, levy or collection of any tax under State law."[26]

Plaintiffs do not deny this, and instead seem to recognize that their request to this Court flies in the face of the restrictions of the TIA. Tellingly, Plaintiffs' repeatedly frame their Complaint, as well as their response to Defendants' instant Motion, in terms that "even if" the TIA applies to their request for injunctive relief as to state income taxes, the Court should still find that they prevail for some other reason. Their commitment to this argument is so complete, in fact, that they neglect to make any case that the TIA *does not* apply to their requested injunction as to state income taxes. The Court thus has no trouble concluding that the TIA deprives it of the ability to issue the injunctive relief Plaintiffs request as to their state income taxes.

### 2. *Injunctive Relief as to Interest and Penalties*

Anticipating the Court's conclusion above, Plaintiffs' Complaint notes that "[i]n the event the Court determines the Tax Injunction Act, 28 U.S.C. § 1341, or other rule of law applies to the income taxes in question, the Plaintiffs seek an alternative remedy of injunctive relief against the interest and penalties." Plaintiffs claim that the TIA does not apply to interest and penalties because neither of those constitute a "tax" for the purposes of the TIA.

In determining whether an assessment is a "tax" under the TIA, courts look to the purpose of the assessment.[27] The purpose of a tax is generally to raise revenue, "while levies assessed for regulatory or punitive purposes, even though they may also raise revenues, are generally not taxes."[28] The ultimate use of the funds may help elucidate the purpose of the assessment, as may

---

[26] 28 U.S.C. § 1341.

[27] *Edmondson*, 594 F.3d at 761.

[28] *Id.* (citation and quotation marks omitted).

the "statute's avowed purpose as stated in its text as well as the incentive structure created by a levy."[29]  The Tenth Circuit has identified several characteristics of state taxes and regulatory fees:

> The classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to help defray an agency's regulatory expenses.[30]

An example of a "classic tax" is state income tax while a "classic fee" might be a charge for entry into a state park, imposed by the state park authority to regulate park usage and support the upkeep of the park.[31]  Assessments that appear to have characteristics of both taxes and regulatory fees are "to be regarded as cases of taxation" unless "regulation is the primary purpose" of the assessment.[32]

The assessment of interest and penalties on Plaintiffs' delinquent taxes for tax year 2020 appear to have characteristics of both taxes and regulatory fees.  On one hand, the Oklahoma Legislature, by statute, set the 1.25% interest rate and 5% penalty rate on delinquent taxes.[33]  Those amounts are thus "expressly prescribed by statute," which is a clear characteristic of a tax.  Further, Oklahoma statute provides that "[a]ll penalties or interest" imposed by title 68 are recoverable as a "part of the tax with respect to which they are imposed" and "shall be apportioned as provided for the apportionment of the tax on which such penalties and interest are collected."[34]  By statute, over 85% of income taxes collected, including interest and penalties on these amounts, are

---

[29] *Id.* (citations omitted).

[30] *Hill v. Kemp*, 478 F.3d 1236, 1245 (10th Cir. 2007) (quoting *Marcus*, 170 F.3d at 1311).

[31] *Id.* at 1246.

[32] *Id.* at 1244.

[33] *See* Okla. Stat. tit. 68, § 217(A); Okla. Stat. tit. 68, § 2375(B).

[34] Okla. Stat. tit. 68, § 217(G).

deposited in Oklahoma's General Revenue Fund for appropriation by the Legislature.[35]  As interest and penalties collected are ultimately "spread among a wide array of State initiatives," rather than used to cover the OTC's regulatory expenses, the use of these assessments likewise suggest these are taxes and not regulatory fees.[36]

On the other hand, as Plaintiffs point out, assessments may serve regulatory purposes when they "deliberately discourag[e] particular conduct by making it more expensive."[37]  This, Plaintiffs contend, is exactly the function of penalties imposed for late payment of income taxes.  Such a penalty discourages late payment by tacking on an additional 5% penalty in addition to the income tax already owed.

A decision by the Seventh Circuit supports Plaintiffs' position on penalties.  In *RTC Commercial Assets Trust v. Phoenix Bond & Indemnity*,[38] the court held that "[s]tates do not assess penalties for the purpose of raising revenue; they assess them so that delinquent tax debtors will be deterred the next time around from ignoring their legal obligations."[39]  "In a Utopian world where all citizens fully complied with their obligations," the court noted, "no penalties at all would be collected."[40]  The court thus concluded that the penalty was not collected to generate revenue, but were rather a regulatory device and therefore not a "tax" for the purposes of the TIA.[41]

---

[35] *See* Okla. Stat. tit. 68, § 2352.

[36] *See Hill*, 478 F.3d at 1245.

[37] *Edmondson*, 594 F.3d at 762 (quoting *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R.*, 967 F.2d 683, 685 (1st Cir. 1992).

[38] 169 F.3d 448 (7th Cir. 1999).

[39] *Id.* at 457.

[40] *Id.*

[41] *Id.*

Several other circuits disagree with the Seventh on this point.  For instance, the Fifth Circuit in *Washington v. Linebarger, Groggan, Blair, Pena & Sampson, LLP*,[42]  held that a penalty imposed for delinquent payment of taxes "is inexorably tied to the tax collection itself, which sustains the essential flow of revenue to the government."[43]   The court noted that the TIA's jurisdictional limitation is "not focused on taxes only, but rather on the broader activities of assessing, levying, and collecting taxes."[44]   The Court therefore held that the penalty was a tax and the TIA applied to bar the exercise of federal jurisdiction.[45]   Relatedly, the Ninth Circuit likewise held that penalties assessed for delinquent payment of taxes constitute part of the "tax" under the TIA.[46]

The Court concludes that both penalties and interest assessed by the state for the late payment of income taxes are part of the "tax" for the purposes of the TIA.  As noted above, the touchstone of the inquiry must be the purpose of the assessment.  Here, while there is no explicit statement by the Legislature what the purpose of interest and penalties on late taxes, the ultimate use to which the funds are put is a strong indicator of purpose.  Interest and penalties on late income taxes in Oklahoma are recoverable "as part of the tax with respect to which they are imposed" and are apportioned the same as well.[47]   In practice, this means the interest and penalties largely end up in Oklahoma's General Revenue Fund for appropriation by the Legislature.  That these

---

[42] 338 F.3d 442 (5th Cir. 2003).

[43] *Id.* at 444.

[44] *Id.*

[45] *Id.*

[46] *Huang v. City of Los Angeles*, 637 F. App'x 363, 364 (9th Cir. 2016).

[47] *See* Okla. Stat. tit. 68, § 217(G).

assessments are set out by statute and are ultimately used to fund a wide variety of governmental programs strongly suggests at least one purpose is revenue collection, as with a "classic tax."

The Court does not doubt that another purpose of the 5% penalty is, as Plaintiffs contend, the regulation of taxpayer behavior—specifically, the deterrence against late payment of income tax. But for the penalty to be a regulatory fee, rather than a tax, regulation must be the "primary purpose" of the penalty.[48] And unlike the Seventh Circuit, the Court does not believe it can be said that regulation is the primary purpose of the penalty. That court's conclusion relied on the premise that "[i]n a Utopian world, where all citizens complied fully with their obligations, no penalties at all would be collected" and thus "the penalty is not a fee calculated to generate revenues."[49] This may be true, in a utopian world. But it makes little sense to presume that the Oklahoma Legislature—or any state legislature, for that matter—is legislating with a utopian state in mind. Rather, the Oklahoma Legislature likely operates on the understanding that Oklahoma is a society where, like all societies, some people do not timely comply with their legal obligations. Anticipating this, the Legislature prescribed a 5% penalty for delinquent payments of state income tax, and it directed that such penalties be collected and apportioned *along with the tax itself*. The penalty is "inexorably tied to the tax collection itself" and is part of the flow of revenue to the state government's general coffers, rather than a regulatory fee collected only for the benefit of the OTC.[50] Accordingly, while regulation is one purpose of the penalty, the Court does not find that it is the primary purpose. The penalty is therefore a "tax" for the purposes of the TIA.

---

[48] *See Hill*, 478 F.3d at 1244 (emphasis added).

[49] *RTC Com. Assets Trust*, 169 F.3d at 457.

[50] *See Washington*, 338 F.3d at 444.

Up until now, the Court's discussion has centered around the monetary penalty imposed by the state's 5% statutory penalty on late payments of tax owed.  Plaintiffs argue this is not the extent of the penalties they have faced, and that they have been subject to non-monetary penalties as well.  For instance, Plaintiff Nellie Meashintubby represents that she recently received a notice from OTC that her occupational license with the Oklahoma State Board of Licensed Alcohol and Drug Counselors may not be renewed if she remains out of compliance with respect to her tax obligations.  This, Plaintiffs contend, is a non-monetary penalty that has no relation to revenue collection and is therefore a regulatory fee.

Defendants respond that this notice was sent to Ms. Meashintubby in error, and support this with a declaration from Jennifer Cole, an administrator in the collections division of the OTC.  Ms. Cole avers that her office neglected to place a "protest" indicator on the Meashintubbys' account, which would indicate that they were deemed "in compliance" with their tax obligations during the pendency of their protest.  Ms. Cole further avers that such an indicator has now been properly placed on the Meashintubbys' account.  Given this declaration, Plaintiffs do not have standing to seek prospective injunctive relief regarding the imposition of non-monetary penalties such as the suspension of a professional license, as those penalties are not "certainly impending" for Ms. Meashintubby, nor is a "substantial risk" that those penalties will be imposed.[51]

The interest assessed on the late tax payments, though not yet explicitly discussed by the Court, is likewise a part of the "tax" under the TIA.  Interest represents the government's

---

[51] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (noting that "[a]n allegation of future injury may suffice" to establish an injury-in-fact for the purposes of Article III standing only if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." (internal quotation marks omitted)).

-13-

"opportunity cost resulting from the delay in receiving the funds," and as such is logically part of the tax itself.[52]  Plaintiff offers no persuasive reason for finding otherwise.

One last consideration counsels in favor of finding that both penalties and interest are part of the "tax" under the TIA.  The Supreme Court has cautioned that "federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text."[53]  If the Court were to hold—as Plaintiffs urge—that interest and penalties were not part of the tax, any time a taxpayer wishing to challenge a state tax in federal court could simply fail to pay the tax until interest and penalties were assessed, and then challenge the interest and penalties in federal court.  Though the taxpayer would not be challenging the tax directly, the challenge to interest and penalties would nevertheless be incompatible with the TIA's avowed purpose of "permitting states to 'define and elaborate their own laws through their own courts and administrative processes without undue influence from the Federal Judiciary.' "[54]  Such an interpretation would create an end-run around the TIA.   The Court will not interpret the TIA such that its restriction of federal district court jurisdiction is essentially meaningless.

In sum, the Court concludes that both the interest and penalties assessed against Plaintiffs by the OTC for their failure to timely pay tax obligations constitute part of the "tax" and the TIA therefore applies.

### 3.     *Declaratory Relief*

Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 that "the Choctaw Reservation is Indian country for the purposes of preempting State taxation, including penalties

---

[52] *Edmondson*, 594 F.3d at 762-63 (citing *RTC Com. Assets Trust*, 478 F.3d at 457).

[53] *Farm Credit Servs. of Cent. Arkansas*, 520 U.S. at 827.

[54] *Edmondson*, 594 F.3d at 761 (quoting *Farm Credit Servs.*, 520 U.S. at 826).

and interest, upon Plaintiffs' income."  But the Supreme Court and Tenth Circuit have clearly held that the TIA's "broad limitation on federal court interference with state collection of taxes is not limited to injunctive relief.  The Tax Injunction Act bars declaratory relief . . . as well."[55]  Plaintiffs contend the Act does not apply to their request for declaratory relief but offer no support for that position whatsoever.  Nor do they at all engage with the authority that holds the exact opposite.  Accordingly, the Court finds that authority controlling, and considers Plaintiffs request for declaratory relief to fall within the purview of the TIA as well.

    4.    *Refund of Taxes Paid Under Protest*

Finally, Plaintiffs seek a refund of the amount of tax they paid under protest for tax year 2020.  Pursuant to Oklahoma statute, an aggrieved taxpayer is permitted to pay taxes under protest, after notice to the OTC of his or her intention to file suit, and may receive a refund of the tax paid if the taxpayer prevails.[56]  But unfortunately for Plaintiffs, the TIA likewise applies to claims seeking refunds of taxes paid.[57]

Plaintiffs, at various points throughout their opposition to Defendants' Motion, seem to suggest that § 226—the Oklahoma statute that allows an aggrieved taxpayer a right of action— should inform or even control the Court's decision as to the applicability of the TIA.  They note that § 226 creates a "right of action in any state or federal court having jurisdiction of the parties and the subject matter."[58]  Because the state itself permits an aggrieved taxpayer to sue in federal court, Plaintiffs seem to argue that the TIA should not operate to divest the court of subject matter

---

[55] *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir. 1986) (citing *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982)).

[56] Okla Stat. tit. 68, § 226.

[57] *Cities Serv. Gas Co.*, 656 F.2d at 586.

[58] Okla Stat. tit. 68, § 226(c).

jurisdiction since the TIA's purpose of respecting state sovereignty on matters of state taxation is satisfied.  This is incorrect.  "[T]he Oklahoma Legislature obviously cannot usurp Congress's prerogative in expanding or contracting the scope of a federal court's jurisdiction."[59]  Further, § 226 only permits a right of action in a federal court "having jurisdiction of the parties and the subject matter."   Section 226 is therefore limited by the scope of federal jurisdiction and incorporates such limits, like that created by the TIA, in the right of action it permits.

**B.    The Courts of Oklahoma offer a "plain, speedy and efficient remedy" for tax disputes.**

Where, as here, a taxpayer's lawsuit falls within the scope of the TIA, the Act deprives the district court of subject matter jurisdiction so long as the state courts offer a "plain, speedy, and efficient remedy."[60]  "If the state provides adequate procedural due process to allow a taxpayer to raise any constitutional objections, then the state has done all that is required under the Tax Injunction Act, and as a consequence, the federal courts are foreclosed from hearing such a tax challenge."[61]

Plaintiff does not dispute that the Oklahoma courts offer a "plain, speedy and efficient remedy" for the resolution of state tax challenges.  And the Tenth Circuit has repeatedly held that Oklahoma courts provide such remedy for aggrieved taxpayers.[62]  Because Plaintiff provides no reason why this conclusion as to the ability of the Oklahoma courts to provide a "plain, speedy, and efficient remedy" for aggrieved taxpayers does not apply to their particular case, the Court

---

[59] *Hill*, 478 F.3d at 1254 n.19.

[60] 28 U.S.C. § 1341.

[61] *Hill*, 478 F.3d at 1253 (alteration and quotations omitted).

[62] *See id.* at 1254; *Brooks*, 801 F.2d at 1240; *Cities Service Gas Co. v. Okla. Tax Comm'n*, 656 F.2d 584, 587–88 (10th Cir. 1981).

likewise concludes that Oklahoma courts offer such remedy for Plaintiffs here.  Accordingly, the

TIA applies to deprive this Court of jurisdiction over the subject matter of Plaintiffs' instant suit.[63]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Lack of Subject

Matter Jurisdiction (Doc. 21) is **GRANTED.**

**IT IS SO ORDERED.**

This case is now closed.

Dated this 30th day of January, 2023.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[63] The Court notes that Defendants also argue that principles of comity support its Motion to Dismiss for Lack of Subject Matter Jurisdiction.  Because the Court finds that the TIA bars its exercise of jurisdiction, it expresses no opinion on whether principles of comity would counsel in favor of the same result.